E-FILED
Thursday, 13 June, 2013 12:55:09 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-10148-MMM |
| | ) | |
| PETER IAN TURNER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S COMMENTARY
ON SENTENCING**

The United States of America, for its commentary on sentencing, states:

## I. Background

Over the course of more than a decade, the defendant took multiple affirmative steps to evade the payment of taxes and penalties assessed by the Internal Revenue Service ("IRS") for tax year 2000 and to evade the assessment of tax liability for tax years 2001 through 2010. These steps included his creation of abusive trusts, purchasing and transferring real property in the names of the trusts, engaging in large cash transactions, and using family members as purported co-trustees and purported trust owners.

It was only after the defendant learned in the fall of 2011 that the Internal Revenue Service ("IRS") had referred its administrative investigation to the U.S.

1

Attorney's Office for grand jury investigation and criminal prosecution when the defendant began filing income tax returns and taking steps towards accepting any responsibility for his decade-long illicit scheme. Until that time, the defendant continued to engage in the evasion of income taxes and thumb his nose at the IRS via numerous frivolous letters and documents in which he repeated the oft-heard mantra of the American illegal tax protester and "sovereign citizen." (App.1-59,62-136,195-225)

On January 15, 2013, the defendant pleaded guilty to the attempted evasion of the payment of tax. He now faces an advisory guideline range of 24 to 36 months. In his sentencing commentary, he objects to the obstruction of justice enhancement. He further requests the Court vary below the advisory guideline range and impose no term of imprisonment. The United States respectfully requests this Court overrule the defendant's objection to the PSR and sentence the defendant within the advisory guideline range.

## II. Commentary

A.   The Defendant Obstructed Justice within the Meaning of USSG § 3C1.1

On July 13, 2005, the IRS issued an administrative summons to a representative of Kroger Food Stores, who is referred to herein as "J.B."(App.87-89) Pursuant to the summons, the IRS sought various records from Kroger Food Stores, by whom the defendant had been employed from approximately 1990

through April 2005. As part of the administrative summons process, the defendant was provided with a copy of the summons and instructions on how to properly contest the summons through a petition to quash filed in the appropriate district court. These instructions provided:

> Enclosed is a copy of a summons served by the IRS to examine records made or kept by, or to request testimony from, the person summoned. If you object to the summons, you are permitted to file a lawsuit in the United States district court in the form of a petition to quash the summons in order to contest the merits of the summons.

(App.88) The notice further provided instructions to the defendant concerning how to determine the appropriate district in which to file a petition to quash, how to title any such filing, what to include in a petition, and how to provide notice to the IRS of the petition should he choose to contest the summons. (App.88)

Instead of filing a petition to quash in the appropriate district court, the defendant sent a letter addressed to IRS Revenue Officer Rose Shawgo and copied a number of individuals on the letter, including J.B. of Kroger Food Stores. (App.85-90) In the letter, which the defendant signed and dated August 10, 2005, the defendant cried forth with his tax protester mantra, declaring the summons "invalid and unenforceable" and "nullif[ied]" because of "total estoppel," and then threatened Kroger, who was under legal obligation to respond to the subpoena:

3

> [I] do not consent to the production of any summoned information by any third party at the time and place of appearance contained in said Summons. Furthermore, any third party who causes me harm by producing records pursuant to said Summons shall not be held harmless.

(App.85) J.B. correctly chose to respond to the summons on behalf of Kroger, but only after first consulting with corporate counsel and "despite Mr. Turner's letter." (App.84)

Section 3C1.1 of the Sentencing Guidelines provides for a two-level enhancement in the offense level if "the defendant willfully . . . attempted to obstruct or impede . . . the administration of justice with respect to the investigation . . . ." The commentary to § 3C1.1 provides examples of the types of conduct amounting to obstruction of justice, including "threatening, intimidating, or otherwise unlawfully influencing a . . . witness, directly or indirectly, or attempting to do so." USSG § 3C1.1, Appl. Note 4(A).

The defendant's assertion that "any third party who causes me harm by producing records pursuant to said Summons shall not be held harmless" cannot be read as anything other than a threat to Kroger. At the very least, he was threatening to sue Kroger if they complied with the legal process with which they were served. His claim that he was only exercising his rights under 26 U.S.C. § 7609(b) to contest the summons is not credible. Section 7609(b), like the notice attached to the copy of the summons served on the defendant, speaks to

4

commencing a court proceeding in federal court to quash the summons, not to sending a threatening communication to the witness who is under legal obligation to respond to the summons.

Further, the defendant's attempt to convince this Court that he was only contesting a premature disclosure of records by Kroger to the IRS does not withstand even the least amount of scrutiny. (R.16,pp.4-5) The defendant's letter speaks for itself; he is not asking Kroger to forebear from making its disclosure until he has time to file a petition to quash. Instead, the defendant actively sought to prohibit any disclosure by Kroger pursuant to the summons, regardless of when the disclosure was to occur, and threatened not to hold them harmless if the complied.

The defendant also argues in his commentary that his conduct was not obstructive because it was not "material." (R.16,p.5) The government understands this argument to mean the defendant believes the enhancement should not apply because his letter did not induce Kroger to withhold the production of records. The probability of the defendant's letter influencing Kroger's actions or whether Kroger was actually influenced by the defendant's letter "is irrelevant because § 3C1.1 specifically . . . covers attempts to obstruct justice . . . and contains no requirement that the attempt to influence the witness be successful." *United States v. Irby*, 240 F.3d 597, 600 (7th Cir. 2001). The

defendant should not be rewarded because he couched his threat to sue Kroger among the inane language of the American illegal tax protester.

The defendant notes that his letter to Kroger Food Stores was "not covert." (R.16,p.4) The government agrees. Protesters, by their very nature, are not covert, and historically, illegal tax protesters are very overt about their positions. Their overt protestations and frivolous arguments have led the Seventh Circuit to accurately label them as "thorns in the side of the federal judiciary." *See, e.g., McLaughlin v. Commissioner*, 832 F.2d 986 (7th Cir. 1987) (per curiam) ("Tax protesters, those who persist in pressing losing arguments in an attempt to challenge the legitimacy of the federal income tax, are thorns in the side of the federal judiciary."). There is simply no case law interpreting USSG § 3C1.1 that requires a threat to be covert before it rises to the level of obstruction of justice. The defendant's letter, in which he stated he would not hold Kroger harmless, is not any less obstructive than if he had told them the same thing in person or over the phone. That he was willing to put it in writing to Kroger (and other third parties under summons) only further shows the arrogance and defiance with which the defendant operated over the decade of his tax evasion.

Lastly, the defendant's argument that he was "manipulated by Dave Bossett" to sign and send the letter deserves little attention. (R.16,p.5) The defendant is a college-educated pharmacist. Anyone with a modicum of

6

education -- let alone a pharmaceutical college education like that of the defendant's -- understands the import of these words: "[A]ny third party who causes me harm . . . shall not be held harmless." Such is the dressed up language of the neighborhood bully. Further, the defendant's threat to Kroger cited in the PSR was not aberrant behavior. He sent a subsequent letter to Kroger in response to a second subpoena as well as to two banks in response to subpoenas served on them. (App.91-99,108-117,118-127) Each of these letters also contained the same threat as in the letter supporting the § 3C1.1 enhancement. The absence of mistake and misunderstanding are evidenced by the four letters.

In conclusion, the defendant attempted to obstruct the IRS's administrative investigation by threatening witnesses who had been served administrative summonses, including Kroger Food Stores. For this reason, he has earned the two-level enhancement for obstruction of justice under USSG § 3C1.1.

B.    The Court should Sentence the Defendant within the Advisory Guideline Range

It should not go unnoticed that the defendant has taken the "I-was-manipulated-by-Dave-Bossett" position while also praying for a significant downward variance based on his alleged extraordinary acceptance of responsibility. Respectfully, any variance from the guideline range is unwarranted.

The defendant seeks to make much of the steps he has taken to make amends over the past year and a half since learning of the criminal referral by the IRS to the U.S. Attorney's Office. He fails to note, however, how he was advised by the IRS on at least two occasions during the course of the administrative investigation about the patent frivolousness of his illegal tax protester arguments. (App.60-61,137-194) In January 2003, in response to the defendant's frivolous October 28, 2002 letter to the IRS (App.35-59), IRS Tax Technician Paine informed the defendant:

> The United States Supreme Court consistently has ruled that the income tax laws are constitutional. The Internal Revenue Service is charged with the responsibility for seeing that taxpayers comply with the internal revenue laws. Persons not filing timely and correct tax returns subject themselves to civil and criminal penalties in addition to their tax liability.

(App.61) The defendant arrogantly responded to Paine's letter, writing, "Your letter dated January 23, 2003, **in no way can be considered to be a response to our previous correspondence**. . . . Therefore I am returning your letter marked '*Refused for Cause Without Dishonor*.'" (App.63) (emphasis in original).

On February 5, 2007, Special Agent Kathy Jo McBride, IRS CI, sent a letter to the defendant that reads, in part, "Federal Courts have consistently ruled against the arguments you have made," and included with her letter a document titled "The Truth About Frivolous Tax Arguments." (App.137-194) In response, the defendant, once again exhibiting his arrogance, wrote, "I received your letter

8

of February 5, 2007, which was obviously a standard boilerplate letter . . . . [Y]our *wild list of court cases that you are citing that refer to tax court can only be frivolous or in the alternative, an attempt at fraud by you.*" (App.196) (emphasis added)

Despite being advised by the IRS in 2003 and 2007that his arguments concerning his purported exemption from income tax were patently frivolous, the defendant continued in his course of tax evasion and took no steps to make amends at that time with his government. His taking responsibility after 10 years of defying the IRS, after using an abusive trust scheme, after sending mounds of frivolous correspondence to the IRS, and, now, only after seeing the figurative noose around his neck is not extraordinary acceptance of responsibility. Such acceptance is like that taken by any defendant upon realization that there is no other option. The guidelines adequately take into account the type of acceptance of responsibility by one who has timely pleaded guilty. Nothing more is warranted in this case.

The defendant also claims that "[t]he most important gesture of his commitment to make repayment [of his tax liability] was the sale of his family home in June 2012 for the purpose of using $203,677 of the sale proceeds to pay his tax liabilities." (R.16,p.2) The defendant fails to note that there was an IRS lien on his home because of his failure to pay the tax and penalties associated with the IRS's assessment of the defendant's tax year 2000 income tax liability. He

9

further fails to note that the significant equity he had in his new home was a result of his evading taxes for nearly a decade.

The defendant also has submitted letters in mitigation from three family members. These letters are, understandably, very positive about a man who has played a very significant role in their lives, who has multiple redeeming qualities, and who they love very deeply. The defendant is clearly important and central to his family as a husband, father, and provider, and any sentence imposed by this Court will affect the entire family. In fact, it is likely his family will be more negatively affected by the defendant's imprisonment than the defendant himself.

The negative impact caused by a defendant's sentence, is not, unfortunately, unique to this particular case. Rarely, if ever, has a parent or spouse been sentenced in federal court when his or her family is unaffected. The defendant's family's situation is squarely within the heartland of the situations courts throughout this country face daily. Undoubtedly, the sentence this Court imposes will affect the defendant's wife and children. Respectfully, however, this is not a weight for the Court to bear, but one the defendant should have foreseen during his 10 years of tax evasion since he admitted in his plea agreement that he willfully evaded taxes. It is he, not the Court, who has directly affected his family by the illicit course of conduct he chose to pursue.

The same family members that understandably seek to shield their husband and father from imprisonment were used by the defendant as a sword in his tax scheme. Mrs. Turner was a co-trustee of the defendant's abusive trusts and held herself out as co-trustee of two abusive trusts. (App.226-231) Mrs. Turner was, at best, an unwitting participant in the defendant's scheme. With respect to the defendant's innocent children, the defendant and Mrs. Turner named them at very early ages as purported owners of one of the abusive trusts that the defendant used and attempted to use in his scheme to evade taxes. (App.232-245) In other words, the children that the father used in his scheme are now in the unenviable position of protecting the father who should have protected them.

Lastly, it is clear from Pastor King's letter of support that he has a high opinion of his parishioner, and the pastor's opinion appears to be supported by the defendant's good character and works within his church over a number of years. One wonders, however, what, if anything, the defendant has told Pastor King that may have led to his opinion that the defendant "has been totally misled and, in his naivety, trapped by this whole sad affair . . . ." (R.16-1,p.5) The affair is beyond "sad"; it is criminal. It is obvious that Pastor King had not read the publicly-filed plea agreement before opining that the defendant was misled and trapped due to his alleged naivety. The facts set forth in the factual basis of the

plea agreement do not portray a naïve, misled man, but a defendant who calculated and schemed to evade taxes for a decade.

In summary, the defendant has earned a sentence within the advisory guideline range based on his 10-year course of tax evasion. He should not be allowed to engage in a 10-year scheme to evade taxes while openly thumbing his nose at the IRS and then be heard at sentencing to claim extraordinary acceptance of responsibility. There is nothing extraordinary about this case or the defendant's acceptance of responsibility that calls for a downward variance.

### III. Conclusion

For the reasons set forth herein and in the presentence investigation report, the United States respectfully requests that this Court overrule the defendant's objection to the PSR and sentence the defendant to a term of imprisonment within the advisory guideline range.

Respectfully submitted,

UNITED STATES OF AMERICA

JAMES A. LEWIS
UNITED STATES ATTORNEY

By:    /s/Greggory R. Walters
Assistant United States Attorney
One Technology Plaza
211 Fulton Street, Suite 400
Peoria, Illinois 61602
Tel: 309-671-7050
Fax: 309-671-7259

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th Day of June, 2013, I filed the foregoing and supporting appendix with the Clerk of the Court using the CM/ECF system. The system will cause notice of the commentary to be sent to:

Robert J. Stientjes
Attorney for Peter Turner

The government, by separate motion, is seeking leave of the Court to file the supporting appendix under seal. Therefore, a copy of the appendix shall be served on Mr. Stientjes by U.S. Mail, First Class and postage prepaid, and by email: rstientjes@taxdefensefirm.com.

Further, because the commentary and supporting appendix exceed 30 pages, a courtesy copy shall be hand delivered on today's date to the chambers of the Hon. Michael M. Mihm, United States District Judge, pursuant to Local Rule 5.8(A).

/s/Debra L. Hansen
Supervisory Legal Assistant